IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2020

**STATE OF TENNESSEE v. GEORGE ANTHONY VASSER**

**Appeal from the Circuit Court for Gibson County**
**No. 19658     Clayburn Peeples, Judge**

_____

**No. W2019-01374-CCA-R3-CD**

_____

The Defendant, George Anthony Vasser, was convicted by a Gibson County Circuit Court jury of selling or delivering cocaine, a Class C felony. *See* T.C.A. § 39-17-417 (2018). He received a sentence of eight years' confinement. On appeal, the Defendant contends that (1) the evidence does not support the Defendant's conviction for selling or delivering, (2) the evidence only supports a conviction for the lesser included offense of casual exchange of drugs, and (3) the trial court erred by failing to enter a judgment of acquittal. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Bill R. Barron, Trenton, Tennessee, for the appellant, George Anthony Vasser.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Garry G. Brown, District Attorney General; and Christie Hopper, and Scott G. Kirk, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

A Gibson County grand jury indicted the Defendant for selling or delivering cocaine after the Defendant sold cocaine to a confidential informant, who recorded the transaction.

At the trial, Trenton Police Department (TPD) Special Agent Micah Pierce testified that he worked on the Drug Task Force for Gibson, Crockett, and Haywood counties. Agent Pierce stated that when investigating drug activity, he sometimes utilized a confidential informant (CI) to conduct an undercover drug buy. He explained that he would talk with a CI a day or two before the scheduled "buy" to set up a meeting. Agent Pierce

explained that he would meet a CI at the chosen location, search the CI's vehicle, and give the CI audio and visual surveillance equipment.

Agent Pierce testified that on January 11, 2017, he met with the CI involved in this case. Agent Pierce explained that the CI informed him from whom he could buy drugs that day. He met with the CI, searched the CI and his vehicle, gave him audio and visual surveillance equipment, and gave him $50 to purchase cocaine. Agent Pierce explained that the recording device was disguised as a coffee cup. He stated that the CI drove to "Fourth Street" and asked to see someone named Anthony. Agent Pierce said that he drove his unmarked car to a nearby street. Agent Pierce explained that the surveillance equipment provided a live audio feed in order to hear what was happening with the CI. Agent Pierce stated that after the drug buy, the CI met Agent Pierce at the fairgrounds and gave him the drugs the CI purchased. Agent Pierce identified a photograph of a field test kit used in this case, which revealed the substance obtained from the CI tested positive for cocaine. Agent Pierce also identified a video recording of the drug buy, and it was entered into evidence. Agent Pierce said that he paid the CI $200 that day for the CI's work in this drug buy and other buys unrelated to this case.

The CI testified that he was working with the Drug Task Force in 2017 purchasing drugs as a CI approximately twice a week. The CI said that on January 11, 2017, he met with Agent Pierce and then purchased drugs from the Defendant. He explained that Agent Pierce searched him and his car, gave him $50 to purchase the drugs, and equipped him with a recording device disguised as a coffee cup.

The recording of the CI's exchange with the Defendant was played for the jury. In the recording, the CI drives up to a house and, through the car's window, asks an individual standing outside the house for "Anthony." The CI approaches the car, and the CI tells the Defendant that he wants a "fifty," and the Defendant gets in the car. The Defendant tells the CI that he only has baking soda and that they will need to drive to another location to obtain drugs. The CI drives up the road, gives the Defendant money, and drops off the Defendant in front of a different home. The Defendant instructs the CI to drive around the block, and the CI drives around for a few minutes. The CI returns to the home where he left the Defendant, stops the car, and the Defendant returns to the front passenger seat. The Defendant shows the CI some white powder wrapped in a napkin and asks him to taste it to test the quality of the product. The CI refuses and says he will wait until he gets home.

The CI testified that when he asked the Defendant for a "fifty," he requested $50 worth of cocaine. He confirmed that the man from whom he purchased drugs in the video recording was the Defendant.

Tennessee Bureau of Investigation (TBI) Special Agent Forensic Scientist Carter DePew testified that he tested the substance collected in this case and that the substance was cocaine, a Schedule II controlled substance.

-2-

Gloria Vasser Phillips, the Defendant's sister, testified that on one occasion she had seen the CI and the Defendant together at her house. Ms. Phillips stated that the Defendant was gay and that she told him she did not want his acquaintances in her home.

The Defendant testified that he was gay and that he had used drugs for years. The Defendant said that he smoked crack cocaine with the CI on multiple occasions. He said that he sometimes had sexual relations with the CI when they used drugs together. The Defendant stated that he did many things to get money, including being paid to have sex with men. The Defendant explained that he and the CI were "lovers" and worked together to obtain drugs. The Defendant explained that he obtained the drugs for the CI because the dealer did not sell to white men. He stated that he gave the CI drugs in order for them to "get high" together and that he did not benefit from the transaction.

Upon this evidence, the jury convicted the Defendant as indicted. The record does not indicate that the Defendant filed a motion for new trial. This appeal followed.

The Defendant contends that (1) the evidence does not support his conviction, (2) the evidence only supports a conviction for casual exchange of drugs, and (3) the trial court erred by failing to enter a judgment of acquittal. The State responds that the Defendant fails to make specific arguments regarding each of the Defendant's issues and argues that the Defendant is raising a sufficiency of the evidence challenge. The State argues that sufficiency of the evidence is the only issue this court should review because the Defendant waived review of any other potential issues by failing to file a motion for new trial. The State concludes that the evidence is sufficient to support the Defendant's conviction for selling or delivering cocaine.

We first note that the Defendant has failed to file a motion for new trial and has waived review of his issues aside from the sufficiency of the evidence for his conviction. *See* T.R.A.P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also Wallace v. State*, 121 S.W.3d 652, 655 n.4 (Tenn. 2003) ("Pursuant to Tennessee Rule of Appellate Procedure 3(e), issues not specifically raised in a timely motion for a new trial, other than sufficiency of the evidence, are not reviewed on appeal.") We also note that "the standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Bart Leo Tucker*, No. M2016-01960-CCA-R3-CD, 2017 WL 3382802, at *3 (Tenn. Crim. App. Aug. 7, 2017); *see also State v. Collier*, 411 S.W.3d 886, 893 (Tenn. 2013). Thus, we will limit our review to the sufficiency of the evidence for the Defendant's conviction.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see State v. Vasques,* 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques,* 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given to the evidence . . . are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall,* 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton,* 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-417 (a)(2), (3) provides in pertinent part that it is an offense for a defendant to knowingly "[d]eliver a controlled substance" or "sell a controlled substance." Cocaine is a Schedule II controlled substance. *Id.* § 39-17-408 (b)(4). Cocaine delivered or sold in an amount less than 0.5 gram is a Class C felony. *Id.* § 39-17-417(b)(2)(A).

Viewed in the light most favorable to the State, the evidence is sufficient to support the Defendant's conviction. Agent Pierce gave the CI $50 and a recording device. The video recording shows that the CI stopped his car near a house and asked for "Anthony." The recording also shows that the Defendant got into the CI's car, that the CI asked for a "fifty" and handed the Defendant money, that the CI and the Defendant drove a short distance, and that the Defendant got out of the car and returned with a substance wrapped in a napkin. The Defendant handed the substance to the CI and encouraged him to taste it. After the Defendant left the car, the CI drove to another location and met with Agent Pierce. The CI gave the substance to Agent Pierce, and the field test revealed that the substance was cocaine. TBI Special Agent Forensic Scientist DePew tested the substance and confirmed that it was cocaine. There is sufficient evidence from which a rational jury could find the Defendant guilty beyond a reasonable doubt of the sale or delivery of cocaine. The Defendant is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE