# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs October 1, 2013

## STATE OF TENNESSEE v. SHANNON ANN MANESS and DARYL WAYNE MANESS

**Appeal from the Circuit Court for Chester County**
**No. 11-CR-46A    Roy B. Morgan, Jr., Judge**

---

**No. W2012-02655-CCA-R3-CD  - Filed January 23, 2014**

---

Appellants, Daryl and Shannon Maness, were each indicted by the Chester County Grand Jury for two counts of aggravated statutory rape. After a jury trial, Appellants were found guilty as charged. They were each sentenced to an effective sentence of three years. The trial court denied Appellants' request for alternative sentencing. On appeal, Appellants argue that the trial court erred in denying their motions in limine requesting the exclusion of certain sexually explicit photographs, that the evidence was insufficient to support their convictions, and that the trial court erred in denying their request for alternative sentences. After a thorough review of the record, we conclude that the trial court did not err in denying the motion in limine and that the evidence was sufficient. However, we conclude that the trial court based the denial of alternative sentencing on deterrence grounds without sufficient evidence as required under *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). Therefore, we affirm Appellants' convictions, but remand for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Kandi Kelley Collins, Jackson, Tennessee, for the appellants, Shannon Ann Maness and Daryl Wayne Maness.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General, and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

The victim, A.G.[1], had known the Appellants her entire life because they were her mother's friends from school. A.G.'s mother was thirty-five at the time of the incidents, so A.G. assumed that Appellants were also thirty-five. In June 2010, the time of the incidents, the victim was fifteen and going into the tenth grade. The victim was living with her grandparents. At some point, A.G. had an argument with her grandfather and asked to live with Appellants, who are a married couple. The victim's mother took her to meet Mrs. Maness, so Mrs. Maness could take A.G. to her mobile home. Appellants lived in a mobile home with their son, who was younger than A.G. The family stayed in one bedroom in the mobile home because the air conditioning was broken. There was a mattress on the floor upon which Appellants' son slept when he was home. The victim slept in the bed with Appellants.

Around June 7, 2010, A.G. was sleeping in the bed with Appellants. Appellants' son was spending the night with his grandparents. A.G. awoke to discover that Appellants were engaging in intercourse and that one of the Appellants was touching her breast. A.G. covered up and turned over. However, Appellants told A.G. that she was "all talk and no action." Mr. Maness undressed A.G., and Mrs. Maness began to touch A.G.'s breast. While Mrs. Maness was touching A.G.'s breast, Mr. Maness got on top of A.G. and engaged in vaginal intercourse with her. A.G. did not resist because she was "in the middle of nowhere with nobody to tell."

About two weeks later, around June 20, A.G. was sleeping in the bed with Appellants again. She stated that both Appellants began touching her. She was undressed at some point. Mr. Maness got on top of her and engaged in vaginal intercourse with A.G., and Mrs. Maness touched A.G. all over her body, including her breasts.

At some point after the second incident, A.G. and another girl were at Appellants' residence. Appellants began to argue, so the girls left and walked down the road. They called the police to pick them up. The police picked up the girls and took them home. A.G. testified that Appellants sent sexually explicit photographs to her cellphone including photographs of a dildo by itself, two photographs of the dildo inserted into Mrs. Maness's vagina, and a photograph of Mr. Maness's semi-erect penis. The photographs were sent in May 2010.

---

[1] It is the policy of this Court to refer to minor victims by their initials.

A.G. did not tell anyone about the incidents until Annette Cotton, who is employed with the Shelby County Sheriff's office and assigned to the FBI's Crimes Against Children Unit, came to her home and spoke with her. Agent Cotton is assigned to the Innocent Images Task Force. On June 30, 2010, Deputy Cotton came to Appellants' home to interview them and execute a search warrant. Initially, Mrs. Maness was the only adult present. Deputy Cotton discovered in her research that Mrs. Maness was thirty-five years old. Eventually, Mr. Maness was present at the interview. Deputy Cotton seized their cellphones and showed the photographs in question to Mr. Maness. Mr. Maness identified the photographs as images of his penis and his wife's vagina.

Agent Steven Lies, with the FBI, accompanied Deputy Cotton to interview Appellants and execute the search warrant. Mr. Maness told Agent Lies that they communicated with A.G. through e-mail and text messaging. Mr. Maness stated that initially their communication was harmless but that it evolved into being sexually explicit.

In November 2011, the Chester County Grand Jury indicted Appellants for two counts of aggravated statutory rape. On June 25, 2012, the trial court held a jury trial. At the conclusion of the jury trial, Appellants were each convicted as charged. On July 13, 2012, at separate sentencing hearings, the trial court sentenced each Appellant to three years for each conviction to be run concurrently. The effective sentence was three years. Appellants appeal both their convictions and sentences.

## ANALYSIS

### Photographs

On appeal, Appellants argue that the trial court erred in denying their motion in limine to exclude certain photographs from use as evidence at trial.

Appellants filed motions in limine to prevent the introduction of sexually explicit photographs of the victim, as well as photographs taken of Appellants. The trial court held a hearing before trial on Appellants' motions. The trial court excluded the photographs taken of the naked victim. The trial court stated that the photographs of the naked, minor victim constitute a crime and could involve allegations of a separate crime. However, the trial court determined that the photograph of Mr. Maness's semi-erect penis, the photograph of a dildo, and the two photographs of the dildo being inserted into Mrs. Maness's vagina could be introduced. The trial court stated that these photographs were relevant because Appellants were sending sexually explicit items to the victim and it demonstrated the relationship between Appellants and A.G.

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases . . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S .W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

The State argues that this issue is waived because the photographs in question have not been included in the record on appeal. The State is correct in this assertion. It is well-settled that it is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record, this Court must presume the correctness of the trial court's ruling. *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991).

## Sufficiency of the Evidence

Appellants argue that the evidence was insufficient to support their convictions. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the

evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Aggravated statutory rape is defined as, "the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." T.C.A. § 39-13-506(c).

Appellants essentially argue that A.G. was the only witness to testify regarding the elements of aggravated statutory rape and that she "had a means to call for help and did not, had an opportunity to inform law enforcement and did not, and could not recall various details." Essentially, this argument is an attack on A.G.'s credibility as a witness.

The victim was the sole witness to the events at issue. Under a recent decision of our supreme court, the victim of aggravated statutory rape is no longer considered an accomplice and, therefore, corroboration is not required of the victim's testimony. *State v. Collier*, 411 S.W.3d 886, 899-90 (Tenn. 2013). The issue presented by Appellants turns on whether the jury found the victim to be credible.

In the case at hand, the jury clearly found the victim to be credible based upon the fact that it found Appellants guilty of both counts of aggravated statutory rape. Questions of credibility are determined by the jury. *Bland*, 958 S.W.2d at 659. When the evidence is taken in the light most favorable to the State, it shows that the victim was fifteen years old and Appellants were thirty-five years old, which is more than ten years older than the victim. Also, there was evidence presented that Mr. Maness sexually penetrated the victim, as well as evidence of Mrs. Maness's participation in the sexual penetration through the theory of criminal responsibility, for which the jury was instructed. We conclude that there was sufficient evidence to support the conviction for aggravated statutory rape of A.G. by Appellants.

This issue is without merit.

## Alternative Sentencing

On appeal, Appellants argue that the trial court erred in denying their requests for alternative sentencing. Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review is also applicable to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Thus, in reviewing a trial court's denial of an alternative sentence, the applicable standard of review is abuse of discretion with a presumption of reasonableness so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." *Id.* The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

As a result of the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). While a presumption no longer exists, an especially mitigated or standard offender convicted of a Class C, D, or E felony is still

considered a "favorable candidate" for alternative sentencing in the absence of evidence to the contrary. *Id.* A defendant is eligible for an alternative sentence if his sentence is ten years or less. T.C.A. § 40-35-303.

In determining a defendant's suitability for a non-incarcerative sentencing alternative, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C).

The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. T.C.A. § 40-35-103(5). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). A defendant is eligible for probation "if the sentence actually imposed . . . is (10) years or less . . . ."

At the sentencing hearing, the trial court stated the following reasons for denying the imposition of an alternative sentence:

> In this case, the Court specifically finds though that confinement is necessary to avoid depreciating the seriousness of the offense, an offense such as this, particularly suited to being also an effective deterrent to others likely to commit similar offenses. Those are very serious considerations for the Court in this case. I just feel like it's necessary again. It's a serious offense, and I want to set forth a deterrence to others under similar circumstances. I think

that they should be required to serve their sentence under the circumstances in the Tennessee Department of Corrections as Range I Offenders, 30 percent release eligibility, and that will be the order of this Court.

Appellants argue that the trial court erred in denying alternative sentencing because "The State presented no proof of prior convictions or wrongs by the Defendant." The trial court based its denial of alternative sentencing on the need for deterrence to others who are likely to commit such an offense.

In *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), our supreme court addressed the reliance upon deterrence as the basis for the denial of alternative sentencing. In *Hooper*, the supreme court stated that if deterrence is the basis for the denial of an alternative sentence, "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *Id.* at 9. The supreme court went on to state the following:

> The trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Hooper*, 29 S.W.3d at 10. The record herein does not contain such evidence as required by *Hooper* that would lead a reasonable person to the conclusion that deterrence is a proper basis to deny alternative sentencing in this case.

Therefore, we conclude that the trial court's denial of alternative sentencing based upon the need for deterrence is not supported by the record. We remand for a new sentencing hearing to determine whether Appellants are suitable for alternative sentences.

## **CONCLUSION**

For the foregoing reasons, we affirm the convictions, but remand for a new sentencing hearing.

_____
JERRY L. SMITH, JUDGE